WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Valerie Loveall,<br><br>    Plaintiff,<br><br>v.<br><br>Nancy A. Berryhill,<br><br>    Defendant. | No. CV-17-0572-TUC-LCK<br><br>**ORDER** |

Plaintiff Valerie Loveall filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of Social Security (Commissioner). (Doc. 1.) Before the Court are Loveall's Opening Brief, Defendant's Responsive Brief, and Loveall's Reply. (Docs. 18-20.) The parties have consented to Magistrate Judge jurisdiction. (Doc. 13.) Based on the pleadings and the administrative record, the Court remands this matter for benefits.

**PROCEDURAL HISTORY**

Loveall filed an application for Disability Insurance Benefits (DIB) in March 2014. (Administrative Record (AR) 163.) She alleged disability from December 31, 2013. (*Id.*) Loveall's application was denied upon initial review (AR 87-96) and on reconsideration (AR 97-106). A hearing was held on January 21, 2016. (AR 45-86.) Subsequently, the ALJ found that Loveall was not disabled. (AR 24-40). The Appeals Council denied Loveall's request to review the ALJ's decision. (AR 1.)

# FACTUAL HISTORY

Loveall was born on March 26, 1971, making her 43 years of age at the onset date of her alleged disability. (AR 163.) Loveall had worked as a pharmacy technician since 1990, before she was laid off at the end of December 2013. (AR 51, 55, 59.)

The ALJ found that Loveall had the severe impairments of degenerative disc disease of the lumbar spine, osteopenia, rheumatoid arthritis, and fibromyalgia. (AR 29.) The ALJ determined Loveall had the RFC to perform light work but could balance, stoop, kneel, crouch, and crawl no more than frequently. (AR 32.) The ALJ concluded at Step Five, based on the testimony of a vocational expert, that Loveall could perform work available in the national economy. (AR 39-40.)

# STANDARD OF REVIEW

The Commissioner employs a five-step sequential process to evaluate DIB claims. 20 C.F.R. § 404.1520; *see also Heckler v. Campbell*, 461 U.S. 458, 460-462 (1983). To establish disability the claimant bears the burden of showing she (1) is not working; (2) has a severe physical or mental impairment; (3) the impairment meets or equals the requirements of a listed impairment; and (4) claimant's RFC precludes her from performing his past work. 20 C.F.R. § 404.1520(a)(4). At Step Five, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, she does not proceed to the next step. 20 C.F.R. § 404.1520(a)(4).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). The findings of the Commissioner are meant to be conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (quoting *Matney v.*

*Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)). The court may overturn the decision to deny benefits only "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). This is so because the ALJ "and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019 (quoting *Richardson v. Perales*, 402 U.S. 389, 400 (1971)); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). The Commissioner's decision, however, "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998) (citing *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). Reviewing courts must consider the evidence that supports as well as detracts from the Commissioner's conclusion. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).

## DISCUSSION

Loveall argues the ALJ committed two errors: (1) she erred in giving treating physician Dr. Tok's opinion reduced weight; and (2) she failed to provide clear and convincing reasons for rejecting Loveall's credibility.

**Medical Opinion of Dr. Tok**

Loveall argues the ALJ failed to provide specific legitimate reasons to reject the opinion of treating physician Dr. Tok. The opinion of a treating physician generally is afforded more weight than a non-examining or reviewing physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The opinion of Dr. Tok was contradicted by that of reviewing physician Dr. Wright. When there are contradictory medical opinions, to reject a treating physician's opinion, the ALJ must provide "specific and legitimate reasons that are supported by substantial evidence." *Id.*; *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Dr. Tok opined that Loveall could sit, stand, and walk for 2 hours each per work day, alternating positions every 20-30 minutes. (AR 389.) He limited Loveall to simple grasping 75% of the time and pushing/pulling and fine manipulation only 50% of the time.

(AR 390.) He found she could frequently lift 5 pounds, and occasionally lift and carry up to 10 pounds but never more. She could occasionally bend, squat, climb, and reach above shoulder level, but never crawl. He also concluded that Loveall would need unscheduled breaks due to joint pain, fatigue, and poor concentration. (AR 391.) The ALJ gave Dr. Tok's opinion little weight because he found it inconsistent with the doctor's treating notes, the doctor had a short treatment history with Loveall prior to providing his opinion, and his opinion was not consistent with the other record evidence. (AR 36.)

The ALJ relied upon the length of Dr. Tok's treatment history, finding his opinion was formed after two appointments. However, the ALJ gave significant weight only to the opinion of non-examining physician, Dr. Wright. (AR 38.) While the ALJ could have discounted Dr. Tok's opinion in favor of a treating doctor with a longer treating history, limited observation of a claimant "is not a reason to give preference to the opinion of a doctor who has *never* examined the claimant." *Lester v. Chater*, 81 F.3d at 832 (9th Cir. 1995) (citing 20 C.F.R. § 404.1527(d)(1)); *see also Andrews v. Comm'r of Soc. Sec.*, No. 2:17-CV-00038-MKD, 2018 WL 1528168, at *9 (E.D. Wash. Mar. 28, 2018) (discounting a medical opinion based on a single exam is "inconsistent" with giving great weight to a non-examining physician). Further, the ALJ's finding is not supported by substantial evidence. Dr. Tok began treating Loveall in July 2014 (AR 355-56), and he saw her six times (not two) before offering his October 2015 opinion (AR 389-91, 393-95, 402-13). Treatment history was not a valid basis to discount Dr. Tok's opinion.

In evaluating Dr. Tok's treating notes, the ALJ cited the doctor's October 2015 exam that revealed cervical pain with range of motion, tenderness in wrists, MCPs, knees and ankles, and mild swelling in PIPs, and the doctor had diagnosed Loveall with mild rheumatoid arthritis. (AR 36.) The ALJ concluded these symptoms and diagnosis were not consistent with Dr. Tok's opinion, particularly his finding that Loveall was limited to lifting and carrying no more than ten pounds and could only perform manipulative tasks 50% of the day. (*Id.*)

At Loveall's first appointment with Dr. Tok, in July 2014, he documented "mild rheumatoid arthritis." (AR 356.) He repeated that impression in September 2014. (AR 410.) In the following year, including in his October 2015 opinion, he did not document a severity level, he merely recorded a diagnosis of rheumatoid arthritis. (AR 389, 396-409.) He also repeatedly noted that she had other diagnoses, including fibromyalgia and other chronic pain, and that medication side effects impacted her ability to work. (AR 389, 393, 395.) The ALJ does not cite any evidence to support his conclusion that Loveall's symptoms were not of the severity level to warrant the restrictions offered by Dr. Tok and she did not offer the specificity necessary to reject a treating doctor's opinion. *See Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) (noting that a treating physician's subjective judgments are important and must be given appropriate weight).

Finally, in concluding that Dr. Tok's opinion was not consistent with the remainder of the record, the ALJ cited Dr. Bhat's treatment notes – Loveall had normal tone and strength, normal gait, no tenderness and normal movement in all extremities. (AR 36-37.) While this accurately reflects a portion of Dr. Bhat's monthly appointment documentation, the ALJ's determination that Dr. Bhat's examinations were inconsistent with Dr. Tok's opinion is wholly conclusory. *See Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017) (discussing how a person with fibromyalgia will retain normal muscle strength, reflexes, sensory functions, and an absence of symptoms reflecting joint and muscle pain). At every appointment with Dr. Bhat, Loveall reported muscles aches and hip and back pain. From May 2014, through the end of the record, Loveall reported to Dr. Bhat that she was experiencing exercise intolerance and fatigue. Fibromyalgia symptoms tend to wax and wane, just as evidenced in the appointment records from Drs. Bhat and Tok which reflect increased substantial pain beyond her baseline in the months of March, April, July, October, and December 2014, and January, February, March, June, and October 2015. (AR 276, 279, 355-56, 369, 393-95, 402-09, 441, 453, 470, 473, 476, 486.)

Further, the only medical opinion on which the ALJ relied in her decision is Dr. Wright's May 29, 2014 opinion. (AR 92-94.) Because that opinion was offered prior to

Loveall seeing Dr. Tok for the first time, Dr. Wright did not review any records from the rheumatologist. Also, Dr. Wright offered his opinion only five months after Loveall was laid-off, and Loveall testified, in January 2016, that her symptoms had gotten progressively worse since December 2013. (AR 73.) Additionally, the opinion of a non-examining physician cannot, alone, constitute substantial evidence to reject a treating doctor's opinion. *See Lester*, 81 F.3d at 831.

In sum, the ALJ failed to provide specific, legitimate reasons supported by substantial evidence to reject the opinion of Dr. Tok.

**Credibility**

Loveall argues the ALJ failed to provide clear and convincing reasons to reject her testimony. In general, "questions of credibility and resolution of conflicts in the testimony are functions solely" for the ALJ. *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). However, "[w]hile an ALJ may certainly find testimony not credible and disregard it . . . [the court] cannot affirm such a determination unless it is supported by specific findings and reasoning." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884-85 (9th Cir. 2006); *Bunnell v. Sullivan*, 947 F.2d 341, 345-346 (9th Cir. 1995) (requiring specificity to ensure a reviewing court the ALJ did not arbitrarily reject a claimant's subjective testimony); SSR 96-7p. "To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

Initially, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell*, 947 F.2d at 344). The ALJ found Loveall had satisfied part one of the test by proving an impairment that could produce the symptoms alleged. (AR 37.) Next, if "there is no affirmative evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281, 1283-84 (9th Cir. 1996)). Here, the ALJ did not make a finding of malingering. Therefore, to support her discounting of Loveall's assertions regarding the severity of her symptoms, the ALJ had to provide clear and convincing, specific reasons. *See Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014); *Vasquez v. Astrue,* 572 F.3d 586, 591 (9th Cir. 2008) (quoting *Lingenfelter*, 504 F.3d at 1036).

The ALJ discounted Loveall's credibility because she performed substantial gainful employment with similar complaints of pain, her pain was relieved by medication, her activities of daily living were inconsistent with her allegations, and the objective medical evidence did not support her allegations of severe functional limitations, (AR 34, 35, 37.)

First, the ALJ is correct that Loveall held employment while being treated for chronic pain. The record indicates she was laid-off from her job as a pharmacy technician and was not told it was related to her physical abilities. (AR 52, 73.) However, she testified that her employer had provided her accommodations without which she could not have performed the job. (AR 52, 63.) Due to pain and weakness in her fingers and wrists she could not perform IV work or lift the IV boxes, and she took a ten-minute break approximately once per hour. (AR 60, 61, 63.) Loveall testified that her physical condition had gotten "significantly worse" since December 2013. (AR 73.) Ultimately, based on her RFC and the vocational expert's testimony, the ALJ concluded Loveall could not perform her past employment. (AR 39, 76.) Further, the VE testified that an hourly break lasting longer than four minutes would preclude competitive employment. (AR 81-82.) The fact that Loveall maintained employment with accommodations for some period, employment the ALJ agrees she can no longer perform, does not undermine her credibility as to the severity of her limitations.

Second, the ALJ looked at Loveall's activities of daily living. The ALJ noted that Loveall went on a job interview, searched for employment, expressed intent to return to school, and exercised occasionally. (AR 37.) The ALJ found these activities inconsistent with Loveall's assertion that she can walk for only five minutes at a time, stand for 10

minutes at a time, and sit for 30 minutes at a time. (*Id.*) If a claimant's activities contradict her testimony, or the claimant spends a substantial portion of her day at activities that involve skills transferable to a work setting, those circumstances can form the basis for an adverse credibility determination. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, the ALJ found that Loveall's activities of daily living were not consistent with her allegations of complete disability.

It is telling that the ALJ did not cite Loveall's function reports or hearing testimony in evaluating her activities of daily living. Those portions of the record indicate that Loveall could not stand, sit, or walk for extended periods and needed to alternate positions often (AR 186, 196, 201); she interspersed resting with some movement every 30 to 60 minutes (AR 186); performed short limited housework tasks and then rested (AR 186, 197, 199); and could only vacuum, mop, or wash dishes for a few minutes before it was too painful (AR 186). She grocery shopped once a week, visited a neighbor up to two times per week, and occasionally socialized with family or friends. (AR 186, 199-200.) The ALJ relied only on passing references in Dr. Bhat's records. Scheduling a job interview, "looking for a job," and planning to attend school are not actions inconsistent with limited physical abilities. The record does not reveal that Loveall scheduled more than one job interview, attended any interviews, or pursued attending school. While Dr. Bhat's records reflect that Loveall's exercise level was "occasional," that notation was part of her "social history." (AR 366, 433, 459, 473, 491.) On the specific dates cited by the ALJ, Loveall reported "exercise intolerance" to Dr. Bhat as a current symptom. (AR 366, 434, 460, 473, 492.) Neither the specific activities cited by the ALJ nor Loveall's usual activities of daily living are inconsistent with her allegations of severe limitations. Therefore, this was not a clear and convincing reason supported by substantial evidence to discount her credibility.

Third, the ALJ noted that Loveall reported relief from her medications on numerous occasions and, at times, her pain was "fairly well-controlled." (AR 35.) Defendant did not rely upon this finding as a reason the ALJ discounted Loveall's credibility. However, because it is included in the same section of the ALJ's decision, the Court evaluates it

briefly. Loveall reported that her pain was fairly-well controlled by her medications in August 2014, July 2015, and September to November 2015. (AR 363, 437, 441, 444, 456.) On most other months, Dr. Bhat merely stated that the prescription medications provided pain relief. (*See, e.g.* AR 448.) In every visit, including those indicating fair pain control, Loveall reported to Dr. Bhat that she was experiencing muscle aches, joint pain, and back pain. Also, in numerous months (including in months that Dr. Bhat recorded that medications provided relief), Loveall reported increased pain. (AR 279 (March 2014); AR 276 (April 2014); AR 369, 355 (July 2014); AR 486, 546, (October 2014); AR 470, 473, 476 (January-March 2015); AR 402, 453 (June 2015); AR 393, 441 (October 2015).) Similarly, Loveall reported to Dr. Tok several times that she benefitted from the medications, but she still was experiencing pain or other symptoms. (AR 410-13 (September 2014); AR 408-09 (December 2014); AR 405-07 (March 2015).) Dr. Bhat's general statements that medication provided relief appear to be merely a basis to continue prescribing the medication. As Loveall was not asked to quantify her pain, the amount of relief provided is unknown. The fact that Loveall received some relief from pain medication, considering that her pain ebbed and flowed and was ever-present at some level, is not a clear and convincing reason to discount her credibility.

The ALJ's remaining basis for discounting Loveall's credibility was the objective medical evidence. If the objective medical evidence fully explained a claimant's symptoms, then credibility would be irrelevant. Credibility factors into the ALJ's decision only when the claimant's stated symptoms are not substantiated by the objective medical evidence. SSR 96-7p. Thus, it is error for an ALJ to discount credibility solely because a claimant's symptoms are not substantiated by the medical evidence. *Id.*; *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). As this is the only basis remaining for the ALJ's credibility finding (AR 19), it is insufficient to sustain it.

In sum, the ALJ failed to provide clear and convincing reasons supported by substantial record evidence to support her credibility finding.

**CONCLUSION**

A federal court may affirm, modify, reverse, or remand a social security case. 42 U.S.C. § 405(g). When a court finds that an administrative decision is flawed, the remedy should generally be remand for "additional investigation or explanation." *INS v. Ventura*, 537 U.S. 12, 16 (2006) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)); *see also Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004). However, a district court should credit as true treating physician opinions and a claimant's testimony that was improperly rejected by the ALJ and remand for benefits if:

> (1) the ALJ failed to provide legally sufficient reasons for rejecting the testimony; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Benecke*, 379 F.3d at 594; *Garrison*, 759 F.3d at 1021 (precluding remand for further proceedings if the purpose is solely to allow ALJ to revisit the medical opinion he rejected). The Ninth Circuit holds that application of the credit as true rule is *mandatory* unless the record creates serious doubt that the claimant is disabled. *Garrison*, 759 F.3d at 1021.

Here, all the requirements of the credit as true rule are satisfied. The Court found the ALJ rejected the opinion of Dr. Tok without specific, legitimate reasons supported by substantial evidence and Loveall's symptom testimony without clear and convincing reasons. There are no outstanding issues that require resolution before the question of disability can be resolved. Crediting the doctor's opinion as true, it is clear the ALJ would be required to find Loveall disabled. Dr. Tok found Loveall capable of sitting, standing, and walking only for a total of 6 work hours per day, which is not at the level of full-time competitive employment. Similarly, Loveall testified that she can neither sit nor stand for long periods, standing only ten minutes at a time and sitting for 30 continuous minutes; she typically naps several hours in the afternoon because of medication. (AR 56-57, 186, 196.) Further, Dr. Tok determined Loveall had limitations in "repetitive reaching, handling or fingering" – she could grasp only 75% of the day and could push/pull or perform fine manipulation only 50% of the day. (AR 390.) The vocational expert testified that Loveall

could not do the light work identified by the ALJ in his decision (cashier, janitor, office helper), if she was restricted to reaching, handling, and fingering less than constantly. (AR 79, 84.) The vocational expert also testified that if Loveall was restricted to less than constant use of hands and fingers, she would be precluded from doing sedentary work. (AR 77-80.) For these reasons, Loveall is necessarily disabled when Loveall's symptom testimony and the opinion of Dr. Tok are credited as true.

After considering the entire record, the Court does not have serious doubt as to whether Loveall is disabled. Finally, Defendant did not argue that, if the Court were to find error, further proceedings were necessary.

Accordingly,

**IT IS ORDERED** that the decision of the Commissioner is **REVERSED AND REMANDED** for an award of benefits. The Clerk of Court should enter judgment and close this case.

Dated this 11th day of February, 2019.

_Lynnette C. Kimmins_
Honorable Lynnette C. Kimmins
United States Magistrate Judge